Mr. Dussemaliyev is in the back of the courtroom. We'd like to reserve two minutes for rebuttal. In looking at this case, we think there are two preliminary points. Number one, this is not a case that involves issues relating to Russia. In the NTA in this case, Mr. Dussemaliyev was charged as a citizen of Kazakhstan, and at the first, at the master calendar, the Department of Homeland Security designated Kazakhstan as the place for removal. That may be so, but his story involved Russia, and I take it that because there was an adverse credibility determination, the IJ and the board can look at things he said under oath dealing with Russia to determine credibility. Is that correct? If it goes to the heart of the claim, and in this case, it doesn't. The claim here is... Yes, I didn't ask that question. I asked the question, can they consider the things about which he has testified that occurred in the Russian Federation? If it goes to the heart of the claim, yes. Well, yes, that's always true. But in this case... But you're saying it doesn't have anything to do with the Russian Federation. It just struck me that it does. Yes, the case does, because the IJ and the board look to that activity in making a credibility determination. Well, that's why the IJ and the board are wrong. Yes. Tell me why. It doesn't have anything to do with Russia. This is focused on the abuse he's suffered in Kazakhstan. Now, the second issue to look at is that... Wait a minute. You just left me. Because it's focused on another country, then it's not germane at all to this case? Yes, that's right. That's your argument. It doesn't go to the heart of the claim. Okay. The claim is based upon the abuse he's received in Kazakhstan for his expression of political views against the Kazakhstan government. Now... Well, I wasn't able to produce some kind of documentation to help us out here. Well, his thesis, the deportation, or even that he went to school, there's just – it seems like bald assertions, really. There doesn't seem to be anything to buttress the allegations. Well, the two key – there are two key – first of all, I think he submitted three corroborating documents, pieces of evidence. Number one, the two medical records that confirmed that he was hospitalized due to the beatings. And in addition, he submitted the expert testimony of an expert who was qualified by the court to discuss political conditions in Kazakhstan who expressed the view that what my client reported is consistent with known conditions and would have resulted in the type of mistreatment that he got. I want to ask you about one of those documents. One of the issues on which the IJ relied was that one of the medical documents was handwritten on a plain piece of paper with an illegible stamp so that it was not viewed as credible. Would you agree that at least that document goes to the heart of the claim, whether it's properly disbelieved or not is another question? It does go to the heart of the claim, yes. So what, in your view, is erroneous, if anything, with the IJ's suspicion of that document? Again, that – I would say that involves the IJ's speculation. It's worth noting that in the record, the Department of Homeland Security did not object to it. Now, but the judge – I mean, the document is what the document is. I do not believe that there was any specific question consistent with board precedent that was directed to my client to explain that. And I do believe that this circuit does require the judge to address that issue to my client. That's true with alleged inconsistencies in testimony, but what case says that a person must be asked to explain a document that presumably speaks for itself? Well, it goes to the whole issue when you've also established in this circuit that when you ask a client where is corroborating evidence or where is your corroboration, that question has to be addressed to them, and you have to consider their answer. In this situation, the judge didn't address it, and it wasn't asked. I would also – I know there's that Third Circuit case where they say, well, the reason that the client, the alien never addressed an issue is because the question was never asked. And I think that the Second Circuit has the same approach. I know the Second, Third, and Ninth Circuits pretty much line up on the idea that it's not a game. You're supposed to ask the alien about something and evaluate his response. And the judge didn't do that here. Now, but what – I think the bottom line here is that the – and I think the BIA kind of addressed it, is that the judge had a personal reaction or an – that this was implausible and then proceeded to try to justify his personal belief in implausibility. While the BIA said that implausibility determination was improper, they really don't address the supposed alleged constellation of problems. And when you go through the – as I did in our brief in chief, the alleged inconsistencies, they do not conform to Ninth Circuit precedent. And it's interesting to note in the BIA decision, BIA never attempts to apply Ninth Circuit precedent to the adverse credibility decision. For example, the argument that Mr. – the test – the medical record do not refer to all the specific injuries. Well, again, the Supreme – this Court has already decided in Singh inconsistent means contradictory, not failure to – not an omission. But that is not discussed and applied here. The judge – for example, the immigration judge wanted exact dates, not even approximate dates, like my client said, well, it was early February. That's not good enough. And as I note on page 24 and 25 of the brief, at one point in time, the judge said, well, Mr. Giesemann-Leov said it was in early February, but the medical record showed it was February 8th. Now the judge goes, aha, an inconsistency. Well, I don't think early February versus February 8th is inconsistent. I think they're consistent. But when you go through, as I did in my brief in chief, the adverse credibility analysis, it does not conform at all to the requirements of Sixth Circuit precedent. Excuse me, Ninth. I'm from Ohio. So – and I think that's the issue. And again, it's a serious point that the BIA never made any effort to evaluate these alleged inconsistencies according to Ninth Circuit precedent, which it explicitly is required to do. Another example that the judge jumped off on was, well, in the asylum application, he says there were several policemen. And then in his testimony, he says there were ten. And the judge goes, ah, it's inconsistent. It isn't. Obviously, ten and several are not. But this is what I think what you had in this case is a judge who had a gut reaction and then attempted to rationalize his gut reaction without applying the law of this circuit. Kennedy. Well, the Ninth, in the opinion of the BIA, it says, quote, In short, the immigration judge articulated an adequate basis to question the Respondent's testimony in light of discrepancies that go to the heart of the asylum claim and then cites a Ninth Circuit case. And if you go through the inconsistencies that are cited, they don't. Oh, wait a minute. You just said he didn't, that the Board didn't use Ninth Circuit cases. I'm pointing out to you a direct quote where they did. Well, it cites two, but then they don't apply it to what the alleged inconsistencies are. That's a different statement. I don't agree. I see I have two minutes left, and I request I reserve that for a moment. You may do that. You may. Thank you. Good morning, Your Honors. I'm Gregory Page representing the Board here from the Justice Department. The crux of the government's case here is that the Petitioner has the burden of establishing a well-founded fear of persecution because of his political opinions, and the Petitioner hasn't come close to meeting that burden here. Counsel, this rises or falls on credibility, though, doesn't it? If the testimony is credible, the other factors would fall into place. That is correct, Your Honor. And under settled Ninth Circuit case law, when the Board of Immigration Appeals and the immigration judge hold that an asylum applicant's testimony about his persecution, his physical persecution, or his fear of political or physical persecution was not credible, then the applicant has the burden of overcoming the fact finder's specialized expertise, and this burden has two parts. I'd refer the panel to the Prasad case, which is 47F, 3rd, 338, 47F, 3rd, 338. The Petitioner must first meet his burden of establishing that his fear of persecution was subjectively genuine, with credible testimony that the applicant genuinely feared persecution at the time it allegedly occurred. Counsel, I would say that in my view there are some problems, at least with the immigration judge, and maybe these have been addressed adequately by the BIA. But it seems to me that to some extent there's speculation here that our cases don't allow. For example, this individual would have been too insignificant. They wouldn't have bothered doing, you know, anything bad to him. That's just guess. And at least one of the medical records is not questioned as to its authenticity. So what is your best piece of evidence on which the BIA relied that supports the adverse credibility finding? Your Honor, the question suggests two responses. The best series of evidentiary statements would be a series of contradictory and inconsistent statements that both the board and the immigration judge used to establish no subjective or objective fear of persecution. Because the second part of that burden is the applicant must not only establish a subjective fear of persecution, genuine fear at the time it occurs, but then he must corroborate this subjective testimony with physical evidence, evidence elsewhere in the record, that establishes that the fear was also objective. So before I get to those three. You're saying that Ninth Circuit law before the new statute required corroboration? What I'm saying, Your Honor, is that there were two. The petitioner's counsel engaged in a soliloquy in which the bench questioned him about whether there was Ninth Circuit precedent to substantiate the board's adverse credibility determination. Okay. Now, I'm asking you actually a different question than that. The board relied on a variety of items to say this person is not believable. We don't believe his testimony. In your view, what are the one or two or three strongest, most clearly permissible bases for that adverse credibility finding as a factual matter? Your Honor, three contradictory statements, which I'll get to in a minute, and then a failure to corroborate, and I know that was a question that was raised by the bench before. Specifically, the petitioner asserted that he was, because of his political advocacy for the Republican People's Party of Kazakhstan, he was tortured in Russia. He was threatened with both a national manhunt and a prison term of five years if he ever returned to Russia. Now, under the Ninth Circuit standard, if the petitioner's fear of persecution in Russia was subjectively genuine, then it is simply not credible here that he would have immediately returned to the same country in which he had previously tortured him, deported him, and threatened him with a five-year prison term because he now viewed Russia as a kind of sanctuary from alleged subsequent abuse in Kazakhstan. Your Honor, on the contrary. Your opposition says that that's not germane because it's not Russia that's involved in this. It's Kyrgyzstan. Your Honor, if you look at his J-1 visa, his outgoing part of his country is he's living in St. Petersburg. And what the immigration judge and the board found here is that the persecution and torture in Russia, which was alleged in the asylum application, it's clearly stated that he was tortured in Russia, was material because it showed that the applicant did not have any subjective fear of persecution in either Russia or Kazakhstan. Now, the event that you just described is not written into the VIA's decision. It was part of the immigration judge's view, but not the BIA. So looking at page 3 of the administrative record, page 2 of the BIA's decision, what in your view is among those things on which the BIA relied is sort of clinches it in your view? Your Honor, the case law is also clear that if the applicant is found to have no credibility about a material part of his application, both his asylum statement and his application and his testimony spent inordinate time talking about a threat of deportation from Russia, torture in Russia in the statement, and also a threat of a prison term if he ever returned to live with his mother in Russia. There are three statements that contradict dramatically the view that Russia was a place where he was being harassed for his advocacy in another country, which on its face seems not credible, but there's three contradictory statements which both the board and the immigration judge relied. He testified that on multiple occasions, and by the way, the sites are in the government's brief at pages 7 to 10, the petitioner testified that on multiple occasions he returned to Russia after he was allegedly tortured in it and deported in May 2002. And in these three times after he had been allegedly deported and threatened with a prison term of five years in Russia, again allegedly tortured in Russia and allegedly deported in May 2002, the applicant stated elsewhere in his testimony that he returned to Russia in June 2002, one month after he was deported under a threat of a prison sentence of five years. That's on Administrative Record 293, Your Honor. At another point in the record, the applicant testified that he returned to Russia for unknown reasons in or around June 2002, again one month after he was allegedly deported from Russia under threat of a prison sentence and according to his asylum statement, his asylum application, tortured in Russia. The third statement, Your Honor, is that... Excuse me, but you're missing the point. I want to get your response. Your adversary says all that doesn't make any difference. It doesn't go to the heart of the claim because the heart of his claim is not in Russia, but in a completely separate country. So his argument is any of these are irrelevant to the decision. And I wanted to get your response to that. Central to the hearing transcript and to the asylum statement, the applicant talks about almost a ping-pong process. He's abused, allegedly abused in Kazakhstan. Then he flees to Russia and he's then deported from Russia and tortured in Russia. He comes back to Kazakhstan. I understand that. I understand the record. I've read the record. The question is, he says that it doesn't make any difference what happened in Russia as far as trying to get a determination as to credibility. Yes. That's the issue he's pointing out, that you have to go only to Kazakhstan to make the determination and credibility because what happened in Russia doesn't go to the heart of his claim. And I wanted your response to that. I don't think I've gotten it yet. Thank you, Your Honor. I'd like to refer the Court to two cases first. I wanted to rebut the view that Ninth Circuit case law was deviated from in the Board's consideration of these statements. It would be the Gow case at 299 F3rd 272, 299 F3rd 272, and the Cheapshoot case at 257 F3rd 1043, 257 F3rd 1043. In these cases, Your Honor, the Ninth Circuit held that an immigration judge or the Board itself may rest an adverse credibility determination on contradictory statements that relate to the applicant's, quote, fear for his safety, end of quote, or the lack of any objective fear for his safety. The Cheapshoot case says that an immigration judge and the Board itself can rely on contradictory statements that bear on the, quote, basis for his alleged fear of persecution. The idea here is if the applicant could not have been credibly threatened in Kazakhstan, you can't, in other words, the Board was justified in not believing that because his testimony is that he looked at Russia, a place where he was allegedly tortured, deported, and threatened with a five-year prison sentence as a sanctuary when he was surrounded with other countries where there is no evidence in the record that he was touched or persecuted, such as Poland or Hungary. So these three inconsistent statements show an applicant that is so eager to come to the U.S. that he talks about torture almost as a currency to come to this country that is completely repudiated by his statement that he returned to the country, another country that had been torturing him as a wreckage immediately. Counsel, you have exceeded your time. Thank you very much. Okay. Mr. Muchnicki, if your client was really being tortured and beaten and followed, why did he wait almost a year to file his asylum documents? He overstayed his visa for some time before filing. Now, this doesn't really, does it facially look like the actions of a man running for his life? That question is never asked of him in the record, and I can't answer you. I'm going to have to confine my answers to the record, and that's never asked of him. Because you have a one-year. He was exercising his rights within the one-year period. Maybe it took him a while to get a lawyer. The record shows he had moved from California to Ohio, whether that was it. I don't know, but there's no record. It's not addressed in the record, and I really can't go beyond that. But what I think is clear, and I think my counsel concedes my point, he couldn't come up with a single instance in Kazakhstan of any basis for an inconsistency determination. He went off on Russia. Okay, let's agree. He doesn't have a fear of being returned to Russia. This case is about returning him to Kazakhstan. And most notably, the BIA, contrary to my distinguished colleague, never discusses this idea, well, he lied about Russia, so therefore he lied about Kazakhstan. The BIA's whole rationale is on this one paragraph on page 2 of its decision. They cite two examples. They say, well, one time he was taken by the police and he was released after being forced to sign a document, which he said in his testimony. And then in his affidavit, he doesn't refer to signing that document. Again, that's not inconsistent under the same standard, because an omission is not an inconsistency under this Court's law. That's the first one. The second example that they provide refers to when he was supposedly beaten at the beginning of May of 2002, which is the same one that the immigration judge cited. And it points out that, well, he was at the hospital May 2nd, and it would have taken him two days. So they question the path there. Again, it's a question of a couple of days one way or another. It doesn't establish anything inconsistent. And those are the two factual examples which the BIA cites, the only two. They don't hold up under this Court's standard. Thank you, counsel. You've exceeded your time as well. We appreciate very much the arguments of both counsel. The case is submitted. Thank you. The next case on the morning calendar is United States v. Flores Perez.
judges: Mills, Wallace, Graber